Good morning, Your Honor. It's George Schraer for Mr. Neuman. Your Honor, the issue in this case is a Batson issue. Specifically, whether under Batson it's required that a judge aggregates challenges to members of different cognizable groups in order to determine whether or not there's discrimination being exercised in the challenges. In this case here, there are three challenges at issue. One to an African-American, one to an Asian-American, and one to a Hispanic. These were the three of the first four challenges. At the end of the fourth challenge, which was to an Asian-American, the defendant made a Batson motion. The court denied it on the grounds that you don't aggregate members of different cognizable groups. End of story. And that was as far as the issue went. Let's suppose you're right about all that. Okay. Does the record show what the final jury was composed of, what the ethnic composition of the jury was? No. So for all we know, it could have been all people of color. Could have been. So don't you lose on that ground? No. Why? You don't lose on that ground because the motion is considered at the time that it's made. If there's discrimination to that point, it doesn't matter that there's no further discrimination after that point. But the only basis for the objection was one strike as to each of three different ethnic groups. The counsel didn't make any proffer. The judge made no comment on what the makeup of the rest of the veneer consisted of. And that's all we have. Yeah. was objectively unreasonable and an objectively unreasonable determination of the facts. But we don't have any facts here, so how do you meet your burden to overcome the EdPA? If there's a prima facie case at the time that the motion is made. But the finding is that there was no prima facie case. That's true. So what facts do you have to convince us under the deferential EdPA standard of review that the California Court of Appeal was wrong in reaching that legal conclusion? It wasn't a factual determination that there was no prima facie case. It was a legal conclusion that he wasn't going to consider this to be a prima facie case because it's as if there were three individual challenges to three groups rather than three out of four challenges to minority jurors. But didn't the Court of Appeals then go on to look at the record to see if they could determine whether or not there was in fact a violation, and then they concluded that he had not established a prima facie case? That's true. That's what they did, but they're not entitled to do that under the Johnson case, which says that you don't look in the record for possible reasons. Instead, you find out the actual reasons, and if they're not stated, then you have no reasons. And this Court has said the same thing in several cases following Johnson. Are we allowed to, again, I take your point about the judge's failure to properly apply Batson in terms of aggregating minorities. Are we allowed to then go look at the rest of the record and see if there was other reason for these challenges? I believe the state makes the argument that all of the people who were struck were either young, unemployed, living with their parents, that sort of thing. Not under Johnson. Not under the Supreme Court's Johnson case. You don't do that. You can't do that. And under this Court's cases as well post-Johnson, well, actually there's one that's pre-Johnson that Johnson cites, but under this Court's case as well, that's not what you do. You don't mine the record for possible reasons. You have to rely on the actual reason. If there's no actual reason stated, there's nothing to look at. But doesn't Johnson deal with Steps 2 and 3 of the Batson framework? I mean, the problem here is that we don't get the questions, do we make Step 1? Yeah. Johnson's a Step 1 case. I thought it refers to the language that you're relying on, I thought it referred to Steps 2 and 3 of the Batson framework. I think that you're thinking of Miller-El, which is a Step 2. Looking at Johnson. Go ahead. All I can say is that if you have an erroneous ruling, if you have discrimination from the get-go, the fact that there's not more discrimination later does not cure the discrimination that's occurred. At that point, as soon as a prima facie case is made, you dismiss the veneer and start all over again. But I think you're putting the cart before the horse, because they're talking about it. Looking at Johnson now, 125 Supreme Court at 2417, the defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. And beyond the fact that the three strikes were made, what other evidence did your client deduce? That's sufficient. Well, that's the question, isn't it? No. There's a case from this Court, Williams v. Reynolds, which said that there was a prima facie case based on the fact that three out of the first four challenges were to minority jurors. Suppose they're all minorities. What does that prove? I'm sorry? Suppose all the jurors on the panel are minorities. What would that prove? Well, if that was the reason for the Court's ruling, that would be something else again. We don't know anything about what the composition was. Well, according to the Attorney General in his brief, there's only one more. Well, let's go back. According to the District Court, six out of 23 are minorities. So that's what they said. So it's not an all-minority juror situation. If the Court had said, I'm not finding a prima facie case because everybody is a minority, so three challenges to minorities, who cares? We couldn't have made three challenges any other way. That would be one thing. But in this situation here, we don't have that sort of a ruling. We have a ruling that simply says, I'm not going to go further. These are three different groups. We're not going to aggregate. End of story. That's your ruling. And anything that the defendant would do from that point on would be meaningless. What you need, counsel, I think, do you not, is a Supreme Court case that says that you can consider that fact, the fact that different ethnic groups were struck as a prima facie case of discrimination. The Ninth Circuit has said that, but the Supreme Court has not said it. So why is it AEDPA error for the California courts to conclude otherwise? Because of the test that the Supreme Court put forth in the Panetti case, which is cited in the brief on page 14, the opening brief and also in the reply brief, which says that you don't just look at a square holding of a United States Supreme Court case. You also look at the principles. So this is an unreasonable refusal to extend? You could look at it that way. Well, is that your argument or not? I look at it as an unreasonable refusal to apply the rationale. All right. I'll accept apply. We're in the world of synonyms here and extend and apply. Okay? Okay. But that's the argument, right? That's the argument. Okay. That's the argument. The argument is that the driving principle of Batson is to eliminate discrimination in all its forms. And it's not tied to some sort of narrow view of what a cognizable group is. You don't sacrifice the principle, the broad principle of anti-discrimination in jury selection on the narrow altar of strict construction of cognizable groups. It's the other way around. What do we do about the fact that the prosecutor said, I have good reasons for why I struck these people, race-neutral reasons, and the judge said I don't want to hear it? The prosecutor had other ways to get that in the record. Perhaps you could file the document. You've got about a minute and change left. Did you want to reserve? Can I keep the minute and change for rebuttal, Your Honor? Sure. You bet. Thank you. Thank you. May it please the Court. Good morning, Your Honor. I'm Kevin Vienne. I'm a California Deputy Attorney General here for Respondent. Good morning. I have just a couple of points to make. The first one is, with some embarrassment, I would say that I should have filed a 28-J letter earlier, but I didn't realize it until last night, that relates to a question you asked, Your Honor, regarding failure to extend. And just a couple of months ago, in April, the United States Supreme Court decided White v. Woodall, 134 Supreme Court, at 1697, that made it quite clear that it is that AEDPA analysis precludes an argument based on a failure to extend. I will follow that up with a letter to the Court, and, again, I apologize for not discovering it until realizing it until late last night. Are you representing the Supreme Court? Pardon me? It's about statements that they've made in several AEDPA cases that there could be a justification for granting? Yes. Relief if a state court refuses to extend unreasonably a principle of Supreme Court law? I'd be very surprised if White says that. It does. What they did quite clearly was to say that that statement, which derived in a case called Williams, is not the law and has never been adopted as the law by the United States Supreme Court and is inconsistent with the text of AEDPA. It is, I believe, at page 1706. 134 Supreme Court, 1697, 2014, April 2014 is the date of the case, and the pin site for that does not require extension. A state court is not required to extend a principle, and the federal court cannot require a state court to do so when it's conducting AEDPA analysis. What was that site again? Your Honor, it's White, W-H-I-T-E versus Woodall, W-O-O-D-A-L-L, not yet in the U.S. reports. 134 Supreme Court, 1697, 2014, and the pin site for my proposition is at page 1706. Okay. Thank you. My second point is simply this. My opposing counsel, who's done a fine job of making the arguments to be made in this case, and I think has largely accurately reflected the record, makes, I think, a mistake of confusing Step 1 analysis and Step 2 analysis. He says that no one can hypothesize a prosecutor's reasons for exercising strikes, but I believe that applies to Step 2 and Step 3. The law seems to be clear that if a trial judge is required to look at all relevant circumstances, all relevant circumstances in deciding whether an inference of discriminatory intent or discriminatory action by the prosecutor has occurred. In this case, the ‑‑ So is your take on Johnson the same as I was questioning your opponent? Is that what you're saying? I think Johnson is clearly a Step 1 case, but it discusses Batson more broadly, so it may ‑‑ But I think the language that he's relying on discusses the analysis of Steps 2 and 3. I think his point is looking at Step 2 and 3. That is, in deciding whether purposeful discrimination has been shown at Step 3, that's largely an analysis of the credibility of the prosecutor's stated reasons at Step 2. Back to Step 1, that is, whether the defense ‑‑ whether the actions at that point, at the point of the objection, raise an inference of discrimination. The language of the case says several, is that you should look at all relevant circumstances. And whether that includes hypothesizing reasons or not, the California Court of Appeal made quite clear that it had decided this case alternatively. That is, first of all, on the ground that aggregation of individual members of groups could not make a group of groups. But also, and this is at page 42 of the excerpts of record, they made quite clearly an alternative analysis saying that even if we do consider all minority members to be members of an individual group for purposes of Batson analysis, this case, there still was no case made that Step 1 had been satisfied. And why is that? There were several reasons. First of all, it was not clear that there was a statistical disparity. As you made quite clear, Your Honor, what's missing here is the denominator. We know that there are ‑‑ it appears that there are clearly two members of minority groups, an African American and a Hispanic, although it seems to me that there's less of a finding with regard to the Hispanics here in this release. The third juror, whose name is spelled NG, no one was sure based on appearance, that inference that she was Southeast Asian was based on the name, which may or may not be correct. But what was missing was a denominator for deciding whether there had been a statistical disparity, that is, three of how many. Was that the one that the trial judge said I thought the accent sounded Southern for want of a better term? That's Mr. Bloom, and I believe he's dropped out altogether, really, from the arguments. That is, defense counsel first thought he was a member of a minority group, and then the trial judge seemed to find that he was, if anything, a Southerner based on his accent. We still don't know what his ethnicity was. We do not know, Your Honor. So there is essentially no arguable evidence of statistical disparity because we don't know what the makeup was of everyone. Opposing counsel says the district court suggested six. I believe it's more accurate to say that there were at least six because we don't know what the demographic breakdown was for most of the jurors. Some guesses could be made with regard to names, but for the 12 seated jurors we don't even know what the names were. In addition, the prosecutor, a quote from the Court of Appeals, the prosecutor did not engage in desultory voir dire of these prospective members, and they did not share only the characterization of being members of a cognizable group. And finally, I mean, I think this is an interesting but not yet resolved question, and that is, is it permissible to look at whether there appears to be an obvious reason for the exercise of strikes against some jurors? I think if you consider all relevant facts, that must be done. We can't require the trial judge to go into the cone of silence or disregard things that are obvious, and it was obvious here that the- But at that point the only thing the trial judge had was whatever the voir dire questioning was up to the point that the Batson motion was made, and whatever the court could see in looking at the appearance of the veneer in trying to determine the ethnicity of the entire group on which the record is virtually silent. Correct, Your Honor, but at the moment that the objection was made, the trial judge could see that the prosecutor had exercised three peremptory challenges against four very young people with little life experience, which is perfectly appropriate. I'm not saying that that should be dispositive, but certainly that is a factor that a trial court need not disregard when deciding whether a statistical or a step one challenge has been made. The alternative suggested by my opposing counsel is essentially this. For every exercise of a challenge that's made against a person who appears to be a minority juror, that automatically satisfies step one. That certainly is not the law, and I don't think it can be the law. I don't think that's his argument. I think his argument is, okay, you strike one juror who is obviously a member of an ethnic group, then you strike another one, then you strike a third one, and at that point defense counsel says, Your Honor, it's very clear to me that the prosecutor is striking every minority. I mean, isn't that what he's arguing? Well, I think that's part of what he's arguing. Is it a cognizable group, as you say, a group of groups? A group of groups, and in the appropriate case, the Supreme Court may decide that, but we're not there yet. But here we have not three, I think, but really only two, because we don't know whether Ms. NG, and I'm sorry I'm not sure how to pronounce that name, we don't know what her ethnicity was. Defense counsel thought she was Middle Eastern. The trial judge could make no estimate based on her appearance and was willing to consider that she might be Southeast Asian. But so we had two of four. Two of the four strikes that were made were made against individuals who appeared to be minority members. Another point I think importantly made by the Court of Appeal in this case is that this took place in Riverside, and the Court of Appeal in a footnote suggests that, you know, if you begin aggregating groups in Southern California today, pretty soon you've aggregated into a majority. And in Riverside, if you aggregate, I think what they were saying is that if you aggregate Hispanics and African-Americans and Asians. Suppose you phrased the objection differently. Instead of saying the people of color group, suppose you said the prosecutor is trying to get an all-white jury. Would that have been a little more pointed? I think it would have been more pointed and it would have been. Isn't that synonymous with saying he's striking everybody of color? I think it is, Your Honor, synonymous. And I think if this were a direct appeal case, the United States Supreme Court might well say that if there is evidence from which an inference could be drawn that the prosecutor's goal is to have an all-white jury, I believe the Supreme Court would say that a group of groups or action of that type does violate equal protection. But we don't have that yet and it's not perfectly clear that the Supreme Court will say that yet and we can't extend current law to get there. That is, in order to. You're out of time. Let me finish your sentence and then we'll. It's simply this. The error by the state court would have to be, in order to warrant relief, would have to be obvious and indisputable. That's what Richter says. And what we have here is not an obvious and indisputable error. We have the state court clearly concerned with the issue and examining it in great detail. Thank you, Your Honor. Thank you. Just three very brief points. NG is pronounced ing. It's a Chinese surname. It's very common. Justice Tallman, you and I were going round and round what Johnson means. I just want to refer you to something on page 37 of the opening brief, a citation to Paulino v. Castro, a decision by this court, which says that this is a step one. It does this in a step one analysis. That is not looking at other possible reasons. So if you're not going to be bound by Johnson because I'm going to correct, which I might be, you're bound by Paulino, which is a Ninth Circuit case. That's the same thing. Do you agree with the question that I asked your opponent? The only record at that point in order to assess the sufficiency of the evidence would have to be the voir dire that had been conducted up to that point, the trial judge's observation, and then the fact that the strikes were made and the objection was lodged. Yeah. I mean, discrimination occurs when it occurs. Right? But the question is, when did it occur? Well, the question is, you have to look at all three in order to even decide whether it occurred. Right. And the problem with your argument is we have this ambiguity with regard to two of the four jurors for which the objection was lodged, and the record doesn't answer the question. The record does, as to Ng. The judge said she was Asian. He made that finding. We can't change that now on appeal. Right. Okay. So the third point was, where is the Supreme Court going with this? I rely on a case called Green v. Travis decided by Justice Sotomayor when she was on the Second Circuit. I think it's safe to say that we understand where at least one justice might go with this. And her reasoning is sound, which is you can't discriminate. That's basic to Batson. But the point is that the Supreme Court has not explicitly made that ruling yet. Correct. That's correct. So where does that leave you? That leaves us with I hope Panetti's still being good law, although I'm not aware of the new case that was cited to me. If that case overrules Panetti and Williams v. Taylor, which was the earlier iteration of it, then I'm in deep trouble. But if it doesn't say that, then Panetti stands and I'm not. So would you agree, though, that this would be an extension of Supreme Court law? No. It's just the only reasonable application of the principle underlying Batson. That's my position on that. All right. Thank you, Your Honor. Thank you. A very well-argued case, gentlemen. The case just argued is submitted. Good morning.
judges: SILVERMAN, TALLMAN, RAWLINSON